```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION
```

LINDA JO T. DERANGO,            )
                                )
            Plaintiff,           )
                                )
    v.                           )    No.  11 C 121
                                )
CAROL STREAM PUBLIC LIBRARY,    )
et al.,                          )
                                )
            Defendants.          )

## MEMORANDUM OPINION AND ORDER

Linda Jo DeRango ("DeRango") has sued her ex-employer Carol Stream Public Library ("Library") and three of its employees, advancing her claims in four separate counts. Defendants have moved to dismiss three of those counts (all except Count II), and the motion is fully briefed and ripe for decision. For the reasons stated here, the motion is granted in part and denied in part.[1]

## Count I - Retaliation in Violation of First Amendment

DeRango seeks to invoke 42 U.S.C. §1983 ("Section 1983") on the basis that her February 2007 termination from her Library job was in retaliation for her exercise of First Amendment rights-- more specifically, her active opposition to the tax referendum that the individual defendants were then supporting for passage in the April 2007 municipal election. Because this early 2011

---

[1] Each of the sections in this memorandum opinion and order will be headed by the count number and the label attached to it in DeRango's Complaint.

lawsuit was thus filed nearly two years after the two year limitation period applicable to Illinois-based Section 1983 actions had already expired, DeRango tries to call on equitable tolling principles to make her filing of the Complaint timely.

For that purpose DeRango points to two emails produced in the course of discovery in other litigation that had been initiated by coworker Elaine Wierdak ("Wierdak")(Wierdak v. Carol Stream Public Library, 09 C 4987), one on January 4, 2005 from the then Library Director to codefendant Ann Kennedy ("Kennedy," the current Library Director) that referred to DeRango's lobbying against an earlier referendum and the other email that was written by Kennedy to the then Library Director after DeRango's termination.[2]

But what DeRango's responsive memorandum fails to face up to is that any plaintiff who seeks to wrap the mantle of equitable tolling around herself must show due diligence in pursuing the possibility that her rights were violated. Here is what Chapple v. Nat'l Starch & Chem. Co., 178 F.3d 501, 505-06 (7th Cir. 1999) teaches on that score:

---

[2] No opinion is expressed here as to the substantive impact of those communications--for example, as to the probative force (1) of the 2005 communication, which antedated DeRango's termination by a full two years, or (2) of the other, which postdated her termination. For present purposes what counts is DeRango's assertion that she first actually learned of the alleged retaliation in the summer of 2010, when those documents were produced in the Wierdak litigation.

2

> The plaintiffs first argue that their late filing
> should be excused because they were unable to discover
> essential evidence necessary to establishing their
> claim until the limitations period had expired. <u>Cada
> v. Baxter Healthcare Corp.</u>, 920 F.2d 446, 450 (7th Cir.
> 1990). This argument attempts to invoke the doctrine
> of equitable tolling, which "permits a plaintiff to
> avoid the bar of the statute of limitations if despite
> all due diligence he is unable to obtain vital
> information bearing on the existence of his claim."
> <u>Id</u>. at 451. However, if a reasonable person in the
> plaintiff's position would have been aware within the
> limitations period of the possibility that its rights
> have been violated, then equity does not toll the
> limitations period. <u>Id</u>.; <u>Hentosh v. Herman M. Finch
> University of Health Sciences</u>, 167 F.3d 1170, 1175 (7th
> Cir. 1999). Although a plaintiff need not allege any
> wrongdoing on the part of the defendant, tolling
> requires a showing that the plaintiff exercised
> continuous diligence and brought the suit as soon as it
> was practicable. <u>Hentosh</u>, 167 F.3d at 1175; <u>Wolin v.
> Smith Barney</u>, 83 F.3d 847, 852 (7th Cir. 1996).

There is no question that DeRango considered herself to have been wrongfully terminated--Library's stated reason was her assertedly poor job performance, and she certainly disagreed with that. But she did nothing at all to discover whether the stated reason was a pretext in place of the motivation she now advances (or any other). Ironically, the very fact that coworker Wierdak instituted litigation in 2009, claiming that <u>she</u> had been terminated wrongfully, demonstrates DeRango's lack of diligence in simply sitting back until the Wierdak lawsuit provided her with the information on which she now relies.

This opinion can thus prescind the legal question whether DeRango would otherwise be entitled to claim equitable tolling at all. Even on the assumption that the question would be answered

3

in the affirmative, her own pleadings have demonstrated her disentitlement to that doctrine. Count I is therefore dismissed as untimely.

Count III - Local Governmental Employees Political Rights Act

In a state law claim advanced under the supplemental jurisdiction provision of 28 U.S.C. §1367(a), DeRango seeks to call into play the statute found at 50 ILCS 135/5 and 135/10:[3]

> §**5. Definition; political rights**. "Political rights" include, without limitation, the following political activities: to petition, to make public speeches, to campaign for or against political candidates, to speak out on questions of public policy, to distribute political literature, to make campaign contributions, and to seek public office.
>
> §**10. Political rights protected**. (a) No unit of local government or school district may make or enforce any rule or ordinance that in any way inhibits or prohibits any of its employees from exercising the employee's political rights.
>
> (b) No employee of a unit of local government or school district may (i) use his or her official position of employment to coerce or inhibit others in the free exercise of their political rights or (ii) engage in political activities while at work or on duty.

As to that claim, the parties cross swords (1) as to whether the statute creates a private right of action for damages (although the sections have been on the books for fully two decades, not a single reported case has either construed or applied them) and relatedly (2) as to what conduct by DeRango led to the asserted

---

[3] For simplicity, those sections are simply referred to as "Act §5" and "Act §10."

"blackballing" about which she complains (whether the conduct had predated or postdated her termination). Despite the total absence of any decided authority that casts light on the quoted provisions of the Act, it would seem that DeRango has the better of the debate.

As for Act §5, its definition of "political rights" certainly appears to encompass DeRango's activities in opposition to the tax referenda to which she refers. And with DeRango's allegations as to retaliatory firing being taken at face value as they must be for present purposes, Act §10 appears to have been breached by the individual defendants.[4]

DeRango also complains of her being "blackballed" from further employment for any Library position. Once again, with that assertion being credited, Act §10(b) would seem to target the individual defendants.

In summary, then, Count III survives for the present. Needless to say, the paucity of any real information about the application of the Act's provisions leaves this subject open for possible further consideration.

Count IV - Intentional Infliction of Emotional Distress

Finally, DeRango's counsel reflects the same kind of

---

[4] Neither side has addressed the statute of limitations applicable to the Act's provisions. Without the litigants' input on that score, it will be assumed that the five-year catch-all provision for "all civil actions not otherwise provided for" under 735 ILCS 5/13-205 would govern.

5

Pavlovian approach (shared by many plaintiffs' lawyers) that is pretty much equivalent to the Pavlovian tendency of too many defense counsel to seek summary judgment even when discovery has revealed the likely existence of genuine issues of material fact that will spell doom for such motions. All too often plaintiffs' lawyers throw a claim of intentional infliction of emotional distress into the hopper, ignoring the stringent standards that the Illinois Supreme Court has established for such claims.

In this instance DeRango's counsel says nothing more about the purported intentional infliction of emotional distress than his memorandum's final sentence after he has discussed her Count III claim:

> For the same reasons, defendants' motion to dismsis plaintiff's claim for intentional infliction of emotional distress (Count IV) must also be denied.

This Court will be equally brief: What DeRango has alleged falls short of the "extreme and outrageous conduct" required by the Illinois cases. Count IV is therefore dismissed.

## Conclusion

Defendants' motion to dismiss is granted as to Complaint Counts I and IV but denied as to Count III. This action will go forward on the two surviving theories of potential liability, Counts II and III.

_____
Milton I. Shadur
Senior United States District Judge

Date: May 3, 2011